IN the MATTER OF: The JANE BRADLEY
UIHLEIN TRUST and the Harry L. Bradley,
Jr. Trust created by Harry L. Bradley, settlor,
on December 17, 1945, and the Sarah Louise
Doll Trust and the Kirk Lynde Doll Trust
created by Caroline D. Bradley as settlor on
November 30, 1951.

Guardian ad Litem, F. William HABERMAN,
Appellant,†

v.

Francis E. FERGUSON, Robert M. Hoffer, Richard
H. Lillie, Kenneth Morrison, David V. Uihlein,
Jane Bradley Pettit, Sarah Louise Doll Barder,
Harry L. Bradley, Jr., Eunice Clews Bradley,
Gregory C. Bradley, Diane Knickle Bradley,
Elissa Bradley Clews, William B. Clews, Mark
S. Bradley, the Lynde & Harry Bradley
Foundation, Inc., Kurt Lynde Doll, Doris
Cheyne Doll, Susan Doll Loesel, Jo Ann Doll
and Lynde Bradley Uihlein, Respondents.

Court of Appeals

*No. 87–0173. Submitted on briefs September 1, 1987.—Decided
November 24, 1987.*

(Also reported in 417 N.W.2d 908.)

† Petition to review denied.

277

For the appellant the cause was submitted on the briefs of *Michael, Best & Friedrich,* with *F. William Haberman* of counsel, of Milwaukee.

For the respondents Harry L. Bradley, Jr., Eunice Clews Bradley, Gregory C. Bradley, Diane Knickle Bradley, Elissa Bradley Clews, William B. Clews and Mark S. Bradley, the cause was submitted on the briefs of *Henry E. Fuldner* and *Michael B. Apfeld,* of *Godfrey & Kahn, S.C.,* of Milwaukee, and *Withington, Cross, Park & Groden,* with *Robert J. Morrissey* of counsel, of Boston, Mass.; and of *Csaplar & Bok,* with *Frederick Goldstein* of counsel, of Boston, Mass.

For the trustees/respondents the cause was submitted on the briefs of *Harrold J. McComas, Robert J. Bonner,* and *Mark G. Petri* of *Foley & Lardner,* of counsel.

For the respondents Jane Bradley Pettit and Sarah Doll Barder the cause was submitted on the briefs of *Francis R. Croak, Margaret T. Lund, Sandra J. Janssen* of *Cook & Franke, S.C.,* of Milwaukee, and *Winston & Strawn,* with *Calvin P. Sawyier* of counsel, of Chicago, Ill.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. F. William Haberman is guardian ad litem (GAL) for all minor beneficiaries and unborn beneficiaries who might have an interest in the Jane Bradley Uihlein Trust, the Harry L. Bradley, Jr. Trust, the Sarah Louise Doll Trust, and the Kirk Lynde Doll Trust (trusts). The GAL appeals from an order denying an equitable adjustment reallocating a part of the assets of the trusts between the

income accounts and the principal accounts for the period of March 1, 1985 to December 31, 1985.

The GAL contends that an equitable adjustment should have been made to reimburse the principal account for benefits conferred on present income beneficiaries by the tax sheltering effect of state capital gains taxes which were paid out of principal and by the trustees' investment policy which emphasized the production of income for income beneficiaries to the detriment of remaindermen. Because the trial court did not err when it refused to apply the doctrine of equitable adjustment, we affirm.

## INTRODUCTION

The doctrine of equitable adjustment allows for a reallocation of assets from the account of one beneficiary of a trust to the account of another to compensate for the disproportionate sharing of a tax burden. Carrico and Bondurant, *Equitable Adjustments: A Survey and Analysis of Precedents and Practice,* 36 Tax Law. 545, 545 (1983). The genesis of the doctrine is *Estate of Warms,* 140 N.Y.S.2d 169 (N.Y. Sur. Ct. 1955). In *Warms,* the court concluded that the trust's principal account was entitled to a reimbursement from the income beneficiary's account for the tax savings that would have resulted if the administration expenses, paid from principal, had been deducted from principal in computing the estate tax instead of from income on the estate's income tax return. *Id.* at 170–71. *Warms* specifically did not decide the question which would have arisen if the executors had no option but would have had to deduct from income taxes an expense otherwise chargeable to principal. *Id.* at 171.

## FACTS

The controversy in this appeal results from the sale of the stock of the Allen-Bradley Company of Milwaukee, Wisconsin (Company). As of February 20, 1985, the four above-named trusts, along with three other trusts, held all of the stock of the Company. On that date, all of the stock was sold for over $1.6 billion. The total capital gains tax paid to the state of Wisconsin by the four trusts was $39,808,936. On December 31, 1985, $20,075,000 was prepaid. The balance was paid April 15, 1986. The tax was charged to the principal account for accounting purposes and was paid from principal.

By application of I.R.C. sec. 643(a) and (b) (1982), the $20,075,000 of Wisconsin capital gains taxes paid from principal in 1985 resulted in a deduction against ordinary gross income realized by the trusts during the 1985 tax year. Because the payment of the tax was used as a deduction for income tax purposes for the sole benefit of the income beneficiaries although no share of the tax was paid from the income account, the income account received $20,075,000 of ordinary income, tax-free.

The trustees also decided to emphasize the production of ordinary income to obtain maximum use of the deduction and to avoid the alternative minimum tax. They adopted an investment policy whereby seventy percent of the trust portfolio was invested in fixed income items and thirty percent in equity items.

The trustees petitioned the circuit court, probate division, for an order allowing their administration of the trust accounts for the period of March 1, 1985 through December 31, 1985. The GAL objected to the accounting and requested an equitable adjustment

with respect to the state capital gains tax and the trustee's investment policy. By an order on July 21, 1986, the trial court approved the accounts but expressly reserved and took under advisement the equitable adjustment issue. On December 15, 1986, the trial court denied the request for an equitable adjustment. The GAL now appeals.

## POWER TO EQUITABLY ADJUST

█
The GAL contends that the trial court erred by refusing to apply the doctrine of equitable adjustment. Because the GAL does not challenge the findings of fact made by the trial court, only a question of law is presented. We independently review questions of law and owe no deference to the trial court. *Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The trial court found that the trustees had broad discretionary power to determine whether to distribute or accumulate income, to determine what is income and what is principal, and to allocate expenditures, including taxes, to either principal or to income.[1] Based upon a stipulation of facts entered into

---

[1]On December 27, 1945, Harry L. Bradley and on November 30, 1951, Carolyn D. Bradley executed trust agreements which created the four trusts in question. The relevant trustee powers were stipulated to by the parties. They are the same and read:

#### ARTICLE X

The Trustees shall use the annual income from the assets in each of the Trusts for the benefit of that Trust only, such income to be applied as to each Trust severally as follows:

. . .

3. To the beneficiaries of the respective Trusts as named in Article IX, so long as they shall live, so much of the balance of the

by the parties, the trial court further found that during 1985 the trustees exercised their discretionary power to add all capital gains to the principal and all federal and state taxes attributed to such gain would be charged to the principal, that all 1985 net income of the trusts should be distributed to the trusts' current income beneficiaries, and that no adjustment would be made from the income account to the principal account with respect to the tax consequences of this decision. The trial court also found that the trustees considered and declined to apply the doctrine of equitable adjustment. The trustees, after considering

income in the respective Trusts for their benefit as the Trustees in their unfettered discretion deem wise.

. . .

### ARTICLE XV

The net income of the respective Trusts shall consist of gross income from Trust investments, including interest, and dividends, but not including profits from the sale, exchange or other disposition of securities or investments, minus all expenses of the respective Trusts, including Trustees' fees, and interest on any indebtedness at any time outstanding against the respective Trust, but not including losses from the sale, exchange or other disposition of securities. *The Trustees shall have the right to determine as to what is "income" and what is "principal" and they shall determine what system of accounting to use,* provided, however, that:

. . .

(d) Any stock dividend or subscription right which may be declared upon or issued in connection with any stock constituting a portion of the Trust shall be considered as principal and not as income. *The Trustees shall in their discretion determine what expenses, fees, costs, taxes and charges of a similar nature shall be charged or credited to income and what to principal.* They may, when and as the same shall to them seem expedient, set up reserves out of income for taxes and assessments, or for repairs and upkeep, or for wasting assets.

(Emphasis added.)

the tax consequences and other related matters, decided not to apply the doctrine. Lastly, the trial court found that the judgments made by the trustees were reasonable and were not a misuse of the discretion granted them in the trust agreements.

The trial court made four conclusions of law: 1) the trustees' decisions were the same as those which would have resulted from application of Wisconsin's Principal and Income Act, sec. 701.20, Stats., in the absence of the trustees' discretionary powers; 2) the broad discretionary powers granted to the trustees permitted them to make an equitable adjustment, and the court should not overturn their decision absent a clear misuse of discretion;[2] 3) the doctrine of equitable adjustment is inapplicable when the challenged consequences are the result of non-elective provisions of tax law; and 4) the doctrine is not the law of the state of Wisconsin. We need not decide whether, in an appropriate case, a Wisconsin court may order equitable adjustment even where nonelective tax provisions are involved. We conclude that when the trustees' discretionary powers permit them to make an equitable

---

[2]The second conclusion of law reads:

The broad discretionary powers granted to the Trustees of the Trusts in the applicable Trust Agreements, including the powers to distribute or accumulate income, to determine what is income and what is principal, to allocate taxes and other expenses to income or to principal, and to determine appropriate trust investments permit the Trustees to make or not to make adjustments between the income and principal accounts and their respective beneficiaries, and the Court should not overturn or change such determinations and decisions under the doctrine of equitable adjustment, absent clear abuse of discretion by the Trustees, and the judgments made by the Trustees were reasonable and not an abuse of discretion.

adjustment and the trial court finds that their decision not to do so was reasonable and not a misuse of discretion, the trial court cannot make an equitable adjustment.

The GAL asserts that the trustees' discretionary power to adjust the principal and income accounts does not include the discretionary power to apply or not apply the doctrine of equitable adjustment. The GAL reasons that because the trust agreements were executed prior to the doctrine's appearance in case law in 1955, and without mentioning the doctrine of equitable adjustment, the power of equitable adjustment could not have existed within the trust agreements. Thus the GAL contends the trustees' consideration of equitable adjustment at their September 24, 1985 meeting was meaningless.

The GAL's logic is flawed. It is correct that the trust powers do not contain in precise terms the power of equitable adjustment. To conclude, however, that the absence of the express power is the equivalent of its nonexistence would be to elevate form over substance, an exercise in which we shall not engage. The GAL may characterize the trustees' powers as only "typical" discretionary powers. Nevertheless, included within those "typical" powers is authority to make an equitable adjustment. The trustees had the discretion to retain income and add it to principal. The trustees also had the discretion to allocate expenses, including taxes, to income or principal. When we consider the undisputed broad investment powers together with the powers listed above, we deem that the power of equitable adjustment exists within the scope of these granted powers, notwithstanding the lack of nomenclature.

285

Because the trustees' discretionary powers were sufficient to include the power to equitably adjust the trust accounts and the trustees in the exercise of their discretion declined to do so, the GAL cannot complain that the doctrine of equitable adjustment ought to have been applied by the trial court. As long as trustees act in good faith, from proper motives, and within the bounds of reasonable judgment under the trust's terms and conditions, the court has no right to interfere. *Filzen v. Headley,* 252 Wis. 322, 326, 31 N.W.2d 520, 522 (1948). The court may interfere only when the trustees act beyond the bounds of a reasonable judgment, misuse their discretion, or act dishonestly and improperly. *Id.*

The trustees discussed the implications of equitably adjusting the trust accounts. After a review of the alternatives, they declined to do so. The record is replete with the factors considered. The explication set forth in the trial court's findings of fact, conclusions of law, and the memorandum decision manifestly satisfies us that the trustees' use of discretion was properly exercised. Under the facts, the decision by the trial court not to intervene in the determination of the trustees by applying the doctrine was not an error of law.

## DUTY OF IMPARTIALITY

The GAL next contends that an equitable adjustment ought to have been made from the income account to the principal account because the alteration of the trusts' investment policy to favor income beneficiaries violated the trustees' duty of impartiality between the income beneficiaries and remainder-

men. The change in investment policy altered the percentage of trust assets invested in fixed income from thirty-five percent to seventy percent. The GAL argues that because of market conditions, the investment policy ought to have been such that the anticipated benefits would be impartially shared by both income beneficiaries and remaindermen. Therefore, the principal is entitled, by equitable adjustment, to receive compensation for the lost appreciation caused by the investment policy. The GAL's basis for this contention is that the trust documents do not disclose an intent to favor either the income beneficiary or the principal beneficiary.

For several reasons, we reject this contention. First, the GAL has cited no authority on point, and we have been unable to find any, for the proposition that differences in investment policy can be the basis for the application of an equitable adjustment.

Second, there is no question that the rate of return for both the fixed income and the equity investments exceeded most national averages. "What might have been" is purely speculative, and not a logical or sound basis to intervene in the trustees' discretionary acts.

Third, under Article XIV of both trust instruments, the trustees possessed the following power:

> Section C. To invest and reinvest the proceeds of such sale or sales in any kind of property .... Such investments may be made without regard to the proportion any such investment or investments of a similar character may bear to the total of any Trust fund.

From a reading of this power, it is evident that the trustees had the right to invest without regard to any ratio of fixed income to equity assets.

Fourth, the trust instruments show that the settlors, Harry L. Bradley and Caroline D. Bradley, intended to favor the income beneficiaries. The introductory paragraphs of the trust instruments expressly state the intent of the settlors to set aside certain property for the use and enjoyment of the named beneficiaries. The first paragraph of Article I of each trust identifies, respectively, Jane Bradley Uihlein, a daughter; Harry L. Bradley, Jr., a son; Sarah Louise Doll, an adopted daughter; and Kirk Lynde Doll, a nephew, as "the person for whose primary benefit said trust was made and for whom the trust is named in Article IX hereof." Article IX of each trust creates separate complete trusts for the benefit of these named individuals. These four individuals are the only persons named as beneficiaries of their trusts. Article I additionally provides that upon the death of the named beneficiaries, if there is no Allen-Bradley Company stock or securities in trust, the trusts could be terminated.

From the recitation of these trust provisions, it is reasonable to infer that the settlors intended to favor the named income beneficiaries over the unnamed remaindermen. By the terms of the trusts, the trustees have discretion to favor one beneficiary over another. The court will not control the exercise of such discretion unless it is abused. Restatement (Second) of Trusts, sec. 183, comment a (1959).

*By the Court.*—Order affirmed.